# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FUAT GJEVUKAJ,** | : | **CIVIL ACTION NO. 1:09-CV-0991** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **CRAIG A. LOWE, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Fuat Gjevukaj ("plaintiff"), a former inmate incarcerated at the Pike County Correctional Facility ("PCCF"), commenced this civil rights action on May 27, 2009, alleging that during the period of March 10, 2009, to May 25, 2009, he was repeatedly denied religiously compatible Halal meals which prevented him from adhering to his Islamic religious beliefs. (Doc. 1.) Presently before the court is a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56, filed on behalf of all defendants. (Doc. 21.) For the reasons set forth below, the motion will be deemed unopposed and granted.

## I. Procedural Background

On August 5, 2009, defendants filed an answer to plaintiff's complaint. (Doc. 11.) Thereafter, on January 13, 2010, a motion for summary judgment (Doc. 18) and all supporting documentation (Docs. 19, 20) were filed on behalf of all defendants. That same day, defendants amended their motion for summary judgment. (Doc. 21). Plaintiff failed to file a brief in response to the motion. See L.R. 7.6 ("Any party

opposing any motion shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion.")  He was directed to file a brief in accordance with L.R. 7.6, on or before February 26, 2010, and was cautioned that his failure to comply with the order may result in the granting of the motion or dismissal of this case for failure to prosecute.  (Doc. 22 citing FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."); Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) (interpreting Federal Rule of Civil Procedure 41(b) as permitting *sua sponte* dismissals by the court); Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)).  Plaintiff failed to oppose the motion.  Consequently, the motion is deemed unopposed.

## II. **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "'The non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate

specific facts showing that there is a genuine issue for trial.' Celotex [ ], 477 U.S. [ ] 324 [ ] (1986) (internal quotations omitted)." Schiazza v. Zoning Hearing Bd., Fairview Twp., York County, Pa, 168 F. Supp. 2d 361, 365 (M.D. Pa. 2001). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. **Statement of Material Facts**[1]

On December 17, 2008, while an inmate at PCCF, plaintiff requested to be placed on a diet which was compliant with Muslim religious restrictions. He was placed on the "Common Fare" diet, which is a modified diet that complies with the restriction of all major religions. (Doc. 20-2, Affidavit of Robert E. McLaughlin ("McLaughlin Affidavit"), at 1-2, ¶¶ 2-4.) PCCF has a policy under which the inmates who are on this diet, are required to comply with the restrictions of the diet in their purchase of Commissary items. (Doc. 23, Affidavit of Warden, Craig A.

---

[1] "A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. Id. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. Because plaintiff failed to oppose defendants' statement, all facts contained therein are deemed admitted.

Lowe ("Lowe Affidavit"), at 2, ¶ 3.)  Specifically, according to PCCF Standing Operation Procedures, "[the common fare diet consists of food items which have been deemed acceptable by all religions.. Inmates on the common fare diet roster cannot eat 'regular food' what so ever.  Additionally, inmates on the common fare diet must not consume 'regular commissary', but may consume commissary items identified as 'Universal' on the commissary menu (the Universal items are compatible with religions requiring a diet accommodation.) [There are fifty-four items on the Commissary Menu which are religiously compliant.  (McLaughlin Affidavit at 3, ¶ 10.)]  Inmates found to be in violation of this protocol, will be removed from the roster for ten (10) days for the first offense.  If this protocol is violated again by the same inmate they will be removed from the common fare roster for ninety (90) days."  (Doc. 24-2, at 2, ¶ 5.)

On December 29, 2008[2], plaintiff was removed from the "Common Fare" diet "when it was discovered that he had been purchasing and consuming regular Commissary Items which do not comply with Muslim religious dietary restrictions." (McLaughlin Affidavit, at 2, ¶ 5.)  He was placed back on the diet on January 7, 2009. (Id. at ¶ 6.)

---

[2]In McLaughlin's affidavit, he mistakenly states that plaintiff was removed from the diet on December 29, 2009.

4

In accordance with the policy, plaintiff was again suspended from the Common Fare diet on March 10, 2009. (Id. at 2, ¶ 7.) He was informed that he would be reinstated after ninety days if he refrained from purchasing and/or consuming regular Commissary items during that time period. (Id. at ¶ 8.) On May 1, 2009, plaintiff inquired as to when he would be eligible for the Common Fare diet. (Id. at 2, ¶ 9.) He was informed that he would not be place back on the diet because he was still ordering and consuming regular Commissary items. (Id. at 3, ¶ 10.)

**IV.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to

5

the free exercise of religion. O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987); see also Shaw v. Murphy, 532 U.S. 223, 229 (2001). The validity of a prison regulation or policy that infringes upon a prisoner's constitutional rights hinges upon whether the regulation or policy is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). This inquiry requires consideration of four factors: (1) the existence of a rational connection between the regulation or policy and a legitimate government interest, (2) the existence of any alternate means the prisoner may have to exercise the right infringed upon, (3) the impact that accommodation of the right would have upon guards, other inmates, and prison resources, and (4) the absence of ready alternatives available to the prison. Id. at 89-90; see DeHart v. Horn), 390 F.3d 262, 264, 268-69 (3d Cir. 2004) (applying Turner analysis to infringements of religious rights under the First Amendment).

The plaintiff contends that his First Amendment rights were violated when defendants refused to provide him with Halal meals. The record demonstrates that plaintiff was receiving a religious diet accommodation called the Common Fare diet in accordance with PCCF's modified diet policy. It is undisputed that the diet was suspended for a period of ten days because he violated the protocol that prohibits him from consuming regular commissary items while on the diet. Shortly after the diet was resumed, plaintiff again violated the restriction on commissary items and the diet was suspended for a period of ninety days.

In analyzing the modified diet policy under Turner, it must first be determined whether the portion of the policy providing that the diet be suspended under certain circumstances is reasonably related to a legitimate penological purpose. Defendants argue that PCCF " accommodated the plaintiff's religious restrictions by providing a diet which was completely compliant with the restriction of the dietary requirements of the Muslim faith. The prison administration, through its policy, asked only that a prisoner who demands adherence to dietary restrictions on the part of the prison, adheres to those restrictions himself. The prison has every right to limit the religiously compliant diet to those prisoners who are in fact complying with that diet twenty-four (24) hours a day." (Doc. 19, at 6.) Clearly, there is a rational connection between the regulation and the government interest. Also, the regulation reasonable in its scope in that it does not permanently terminate the prisoner's right to consume a modified diet.

In evaluating the second Turner factor, "courts must examine whether an inmate has alternative means of practicing his or her religion generally, not whether an inmate has alternative means of engaging in the particular practice in question." Dehart v. Horn, 227 F.3d 47, 55 (3d Cir. 2000). The only First Amendment violation of which plaintiff complains is the denial of Halal meals. There is no indication that he was denied other means of practicing his religion such as daily prayer or religious services.

With respect to the third and fourth Turner factors, it is clear from the record that PCCF accommodates religious diet requests. Defendants point out that "[p]reparing a special diet for Muslim prisoners who demand it is an expense and an administrative task for the prison. It is not simply a matter of preference for the prisoners. If a prisoner is not complying with the religious diet in the Commissary, he has not constitutional rights to demand that a diet be provided which is different from the diet consumed by every other prisoner." (Doc. 19, at 7.)

In summary, the Turner factors suggest that PCCF has a legitimate penological interest in suspending the Common Fare diet when protocol is not followed. Plaintiff, being the party adverse to summary judgment, must raise "more than a mere scintilla of evidence in [his] favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Plaintiff has failed to meet his burden in that he has completely failed to oppose defendants' motion. Accordingly, the motion for summary judgment will be granted.

**IV. Conclusion**

Based on the foregoing, the motion for summary judgment (Doc. 21) will be deemed unopposed and granted.

An appropriate order will issue.

                            S/ Christopher C. Conner
                            CHRISTOPHER C. CONNER
                            United States District Judge

Dated:        April 26, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FUAT GJEVUKAJ**, | : | **CIVIL ACTION NO. 1:09-CV-0991** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **CRAIG A. LOWE, et al.**, | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 26th day of April, 2010, upon consideration of defendants' unopposed amended motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. 21), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 21) is DEEMED unopposed and GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge